# EXHIBIT A

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE:

FORCE-PLACED
INSURANCE LITIGATION

MDL Docket No. 2338

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF AMENDMENT TO MOTION FOR TRANSFER
PURSUANT TO 28 U.S.C. § 1407**

Plaintiffs Alberto Barreto, Carol Lynn Upshaw, and Salvatore Saccoccio, in the action styled *Alberto Barreto et al. v. Chase Home Finance, et al.,* No. 12-cv-21988, pending in the United States District Court for the Southern District of Florida, respectfully request that the Judicial Panel on Multidistrict Litigation (the "Panel") enter an order pursuant to 28 U.S.C. § 1407 consolidating and transferring to the United States District Court for the Southern District of Florida all pending cases identified in the Schedule of Actions (the "Related Cases") challenging the force-placed insurance practices of the following banks: (1) Wells Fargo Bank, N.A. ("Wells Fargo"); (2) JPMorgan Chase Bank, N.A. ("Chase"); (3) Bank of America, N.A. ("Bank of America"); (4) CitiBank, N.A. ("Citi"); (5) GMAC Mortgage, LLC, now known as Ally Financial ("GMAC"); (6) U.S. Bank, N.A. ("U.S. Bank"); (7) Financial Freedom LLC, a subsidiary of OneWest Bank ("OneWest"); (8) HSBC Mortgage Corp. ("HSBC"); and (9) American Home Mortgage Servicing, Inc.; and of the following insurers: (1) Assurant, Inc. ("Assurant"), (2) Balboa Insurance Co. ("Balboa") and (3) QBE Specialty Insurance Co. ("QBE"); and/or of all of the companies' affiliated entities.

## INTRODUCTION

The Related Cases are putative class actions challenging the common, industry-wide predatory practices of certain banks and insurers in force-placing hazard, wind, and flood insurance on homeowners. The three insurer defendants—Assurant, Balboa, and QBE—write approximately 99% of force-placed insurance policies nationwide. The nine defendant banks—Wells Fargo, Chase, Bank of America, Citi, GMAC, U.S. Bank, OneWest, HSBC, and American Home Mortgage Servicing—are, respectively, the first, second, third, fourth, fifth, sixth, tenth, twelfth, and twentieth largest mortgage service-

1

providers nationwide. The scope of this proposed MDL thus encompasses all of the major participants in the force-placed insurance industry.

The Related Cases share factual and legal questions relating to the defendants' force-placed insurance practices. Each Related Case alleges that one of the banks schemes together with one of the insurers to extract unduly high insurance premiums from homeowners. In addition, each Related Case seeks to certify either a nationwide or statewide class under Rule 23 of the Federal Rules of Procedure, and each asserts a claim for breach of contract or breach of the covenant of good faith and fair dealing, with most also asserting claims for unjust enrichment.

Centralization of this litigation will serve the interests of justice, judicial economy, and comity by eliminating duplicative discovery on the common factual questions and avoiding inconsistent pre-trial rulings on the common legal questions. The risk of inconsistent pre-trial rulings is particularly high here, as the various plaintiffs have filed more than thirty competing and overlapping class actions to date. As the Related Cases are still in their initial stages, potential inefficiencies can be avoided by immediate transfer and coordination or consolidation.

The Southern District of Florida has the strongest nexus to the litigation and would be the most convenient forum for the highest concentration of plaintiffs and putative class members because Florida has the highest concentration of force-placed insurance policies and more premiums charged (in dollars) than any other state. The Southern District of Florida is also a proper transferee district because more lawsuits arising from force-placed insurance practices by the various banks and insurance companies are pending in the Southern District of Florida than in any other federal

district, including the most advanced force-placed insurance case in the country.[1] Additionally, the Southern District of Florida has the resources and capacity to effectively manage this multidistrict litigation.

Chief Judge Federico Moreno has informed undersigned counsel that he would welcome a force-placed insurance MDL in the Southern District of Florida and would consider handling the proceedings. Finally, judges in the Southern District of Florida, including Chief Judge Moreno, have significant experience in effectively handling sprawling, multi-defendant MDLs involving the banking and insurance industries. *See In re: Managed Care HMO Litigation* (MDL No. 1334) (Chief Judge Moreno presiding over case involving a class of over 600,000 physicians as well as millions of patients, bringing claims against every large managed care organization in the United States); *In re: Checking Account Overdraft Litigation* (MDL No. 2036) (Senior Judge James Lawrence King presiding over case involving many of the same bank defendants as in the proposed force-placed insurance proceedings and similar claims and defenses).

Because consolidation of this litigation and transfer to the Southern District of Florida would greatly promote the just and expeditious resolution of these actions, the Panel should grant Plaintiffs' motion.

## I.  GENERAL BACKGROUND OF THE LITIGATION

### A.  The Force-Placed Insurance Scheme.

The attached affidavit of Mr. Birny Birnbaum—one of the foremost experts in the country regarding force-placed insurance practices—explains the structure and common

---

[1] *See Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.). The *Williams* Florida class was certified on February 21, 2012, discovery is nearly complete, class notice is due to be issued, and the parties have proposed a December 2012 trial date.

practices of the force-placed insurance industry.[2] *See generally* Affidavit of Birny Birnbaum ("Birnbaum Aff.") (**Exhibit A**). When a home loan is approved, mortgage servicers or lenders typically require the borrower, under the terms of the mortgage, to carry appropriate hazard, flood, and/or wind insurance on the property to cover the lender's risk. *See* Birnbaum Aff. ¶¶ 4, 19. If a borrower's policy lapses, the lender or mortgage servicer "force places" new coverage to cover its interest in the property, and charges the homeowner the full amount of the premium, by either deducting its cost from the borrower's escrow account or adding the cost to the balance of the mortgage principal. *Id.* ¶¶ 4, 5. The force-placed policies cover only the dwelling and do not cover the homeowner's personal property or liability as a standard homeowner's policy would. *Id.* ¶ 14. This practice is virtually identical for all of the banks that provide force-placed insurance. *Id.* ¶¶ 31-34.

None of the servicers and lenders named as defendants in the Related Cases purchases force-placed policies in a competitive market. Instead, they enter into exclusive arrangements with cooperating insurers (the insurers named as Defendants here) to provide force-placed coverage to all borrowers with lapsed policies. *See id.* ¶¶ 24, 31-34.

The defendants named in the Related Cases are the banks and insurers responsible for the vast majority of all force-placed insurance issued nationwide, and their force-placed programs operate in an almost identical manner, regardless of whether the policy

---

[2] Many of the class action complaints filed across the country cite to Mr. Birnbaum and his findings regarding force-placed insurance. *See, e.g., Gustafson v. BAC Home Loan Servs. LP*, No. 11-cv-00915 (C.D. Cal.) (D.E. 98 at 15). Additionally, in *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.), the Honorable Robert Scola denied Defendants' motion to exclude Mr. Birnbaum, finding that "it is beyond peradventure that Birnbaum is qualified to give his expert opinions about the excessiveness of QBE's rates." *Id.* (D.E. 211 at 4). A copy of Mr. Birnbaum's resume is attached to his Affidavit.

being placed provides hazard, wind, or flood insurance.   (Birnbaum Aff. ¶¶ 24, 29, 30,

33).    This is largely because the force-placed programs at issue in the Related Cases

were designed by the same two insurers—QBE/Balboa and Assurant.[3]  *Id.* ¶¶ 24, 31, 32.

Both QBE/Balboa and Assurant designed their force-placed programs to comply with

Fannie Mae's mortgage servicing guidelines.  *Id.* ¶ 32.  Consequently, the two insurers'

programs are substantially similar in terms of insurance tracking, notifications to

borrowers, placement of force-placed coverage, and force-placed policies.  *Id.*

Both QBE/Balboa and Assurant issue group insurance "master" policies to the

lenders to provide automatic coverage for all mortgages in the lender's portfolio.  *Id.* ¶¶

7, 8.  When an individual borrower's voluntary policy lapses, the risk that is exposed is

automatically covered by the master policy.  *Id.* ¶ 8.  The mechanics for tracking and

placing insurance are fundamentally the same regardless of the type of coverage being

placed (i.e., hazard, flood, excess flood, wind, or excess wind).  *Id.* ¶ 33.

Once the insurer is alerted to a lapse in voluntary insurance, it issues a temporary

binder of insurance coverage retroactive to the date of the lapse and notifies the borrower

(on the lender's behalf) that force-placed premiums will be added to the balance of the

borrower's mortgage loan.  *Id.* ¶ 9.  The sequence of notifications to the borrower is

essentially the same for hazard, flood, excess flood, wind, and excess wind coverage.  *Id.*

¶¶ 33, 34.  The insurer bills the lender for all of the insurance provided on a monthly

basis, and the lender then charges the cost of the force-placed premiums to the consumer.

*Id.* ¶ 10.

---

[3] Since 2000, Assurant has been the largest insurer servicing national mortgage servicers.  *See* Birnbaum
Aff. ¶ 24.  Balboa, the second largest, was a subsidiary of Bank of America until June 2011, when its force-
placed insurance business was acquired by QBE.  *Id.*  Assurant, Balboa, and QBE wrote over 99% of all
force-placed insurance nationwide for most years between 2004 and 2011.  *See id.* ¶ 29 & Table 2.

Plaintiffs in the Related Cases allege that, as a result of these standardized practices and arrangements, the defendant insurers and banks charge homeowners force-placed premiums that are not arrived at on a competitive basis and are significantly higher than those that would be available in the open market. The premiums are inflated to cover bundled administrative costs not properly charged to the homeowner and unearned "commissions" or kickbacks that are ultimately paid to the banks or their affiliates. These kickbacks are designed to incentivize the banks to continue their exclusive relationships with the insurers. The insurers also provide additional kickbacks to the banks by entering into captive reinsurance arrangements with the bank and its affiliates pursuant to which the bank is paid a portion of the force-placed premiums without assuming commensurate risk.

An article published in *American Banker* on November 10, 2010 was one of the main catalysts for the recent wave of force-placed insurance litigation. The article cited specific examples of how force-placed insurance rates for homeowners in Florida grossly exceeded voluntary insurance rates available to homeowners in a competitive market and included quotes from undersigned counsel representing those Florida homeowners. Plaintiffs expect that many more lawsuits will be filed against the Defendants seeking to recover the inflated charges as the full nature of Defendants' conduct comes to light and is the subject of greater scrutiny by the state governments and regulators.

### B.     BACKGROUND OF THE RELATED CASES

The following chart sets forth aspects of the Related Cases that are relevant to transfer. The chart shows which district the case is pending in, the date the case was filed, whether the complaint asserts breach of contract/breach of the covenant of good faith and fair dealing ("Breach of K/Good Faith") or unjust enrichment claims, and a

brief status of each case.

| STYLE | DISTRICT | DATE FILED | COMMON CLAIMS | | STATUS OF PROCEEDING |
|---|---|---|---|---|---|
| | | | Breach of K/ Good Faith | Unjust Enrich. | |
| **WELLS FARGO CASES** | | | | | |
| Williams v. WF & QBE | S.D. Fla. | 4/7/11 | √ | √ | 12(b)(6) motion denied in part; statewide class certified, Eleventh Circuit appeal denied |
| Morris v. WF | W.D. Pa. | 4/7/11 | √ | √ | 12(b)(6) motion briefed |
| Kunzelmann v. WF | S.D. Fla. | 12/20/11 | √ | √ | 12(b)(6) denied; class certification motion pending |
| Passantino-Miller v. WF | E.D. Cal. | 2/17/12 | √ | √ | 12(b)(6) motion briefing not complete |
| Cannon v. WF | N.D. Cal. | 3/19/12 | √ | √ | 12(b)(6) motion briefing not complete |
| Feaz v. WF | S.D. Ala. | 5/24/12 | √ | √ | No 12(b) motion or answer |
| Hallie v. WF & Assurant | N.D. Ind. | 6/15/12 | √ | √ | No 12(b) motion or answer |
| Simpkins v. WF & Assurant | S.D. Ill. | 7/5/12 | √ | √ | No 12(b) motion or answer |
| Fladell v. WF | S.D. Fla. | 7/11/12 | √ | √ | No 12(b) motion or answer |
| **CHASE CASES** | | | | | |
| McNeary-Calloway v. Chase | N.D. Cal. | 6/20/11 | √ | √ | 12(b)(6) motion denied in part; stayed pending mediation |
| Gordon v. Chase | M.D. Fla. | 9/1/11 | √ | | 12(b)(6) motion denied in part; stayed pending mediation |
| Clements v. Chase | N.D. Cal. | 5/1/12 | √ | √ | No 12(b)(6) motion or responsive pleadings; stayed pending mediation |
| Pulley v. Chase | S.D. Fla. | 5/1/12 | √ | √ | No 12(b) motion or answer; stayed pending Panel decision |
| Scheetz v. Chase | S.D.N.Y. | 5/23/12 | √ | √ | No 12(b) motion or answer; stayed pending mediation |
| Yogev v. Chase | S.D. Fla. | 5/29/12 | √ | √ | No 12(b) motion or answer; stayed pending Panel decision |
| Barreto v. Chase & Assurant | S.D. Fla. | 6/1/12 | √ | √ | No 12(b) motion or answer |
| Herrick v. Chase & Assurant | S.D. Fla. | 6/15/12 | √ | √ | No 12(b) motion or answer |
| **BANK OF AMERICA CASES** | | | | | |

| STYLE | DISTRICT | DATE FILED | COMMON CLAIMS | | STATUS OF PROCEEDING |
|---|---|---|---|---|---|
| | | | Breach of K/ Good Faith | Unjust Enrich. | |
| Berger v. BoA | D. Mass. | 9/17/10 | √ | | 56(c) motion on mootness, briefing not complete |
| Resnick v. BoA | D. Mass. | 10/1/10 | √ | | 12(b)(6) motion denied in part |
| Gustafson v. BoA & Balboa | C.D. Cal. | 6/17/11 | √ | | 12(b)(6) motion denied in part |
| Lugo v. BoA | S.D.N.Y. | 11/7/11 | √ | √ | 12(b)(6) motion briefed |
| Arnett v. BoA | D. Or. | 11/14/11 | √ | √ | 12(c) motion briefed |
| Lemmer v. BoA | W.D.N.C. | 4/20/12 | √ | | Complaint answered |
| Wallace v. BoA | D. Or. | 5/24/12 | √ | √ | No 12(b) motion or answer |
| Gallagher v. BoA | S.D. Fla. | 6/25/12 | √ | √ | No 12(b) motion or answer |
| **CITIBANK CASE** | | | | | |
| Casey v. CitiBank | N.D.N.Y. | 5/17/12 | √ | √ | No 12(b) motion or answer |
| **GMAC CASES** | | | | | |
| Ulbrich v. GMAC & Balboa | S.D. Fla. | 11/14/11 | √ | √ | 12(b)(6) motion briefed; stayed against GMAC due to bankruptcy |
| Rothstein v. GMAC & Balboa | S.D.N.Y. | 4/30/12 | √ | √ | No 12(b) motion or answer |
| **US BANK CASE** | | | | | |
| Ellsworth v. US Bank | N.D. Cal. | 5/16/12 | √ | | 12(b)(6) motion briefing not complete |
| **ONEWEST BANK CASE** | | | | | |
| Degutis v. Financial Freedom | M.D. Fla. | 6/11/12 | √ | √ | No 12(b) motion or answer |
| **HSBC CASE** | | | | | |
| Maxwell v. HSBC & Assurant | S.D.N.Y. | 3/7/12 | √ | √ | 12(b)(6) motion briefing not complete |

| STYLE | DISTRICT | DATE FILED | COMMON CLAIMS | | STATUS OF PROCEEDING |
|---|---|---|---|---|---|
| | | | Breach of K/ Good Faith | Unjust Enrich. | |
| **AMERICAN HOME MORTGAGE CASE** | | | | | |
| Martorella v. Deutsche Bank | S.D. Fla. | 4/9/12 | √ | √ | 12(b)(6) motion briefed |

In total, there are thirty-two Related Cases. Ten are in the Southern District of Florida, four are in the Southern District of New York, four are in the Northern District of California, two are in the Middle District of Florida, two are in the District of Massachusetts, two are in the District of Oregon, and one is in each of eight other districts across the country. Nineteen Related Cases have been filed within the past four months. Every Related Case asserts a claim for breach of contract and/or breach of the covenant of good faith and fair dealing, and twenty-six assert claims for unjust enrichment. No 12(b) motions or responsive pleadings have been filed in fifteen Related Cases; in seven Related Cases, either the parties are currently briefing motions to dismiss, or the court has not yet ruled on a motion to dismiss that is fully briefed; and in the ten remaining Related Cases, either motions to dismiss have been denied in part or the defendants have just answered the complaint. The issue of class certification has only been fully briefed and ruled upon in one Related Case. *See Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.).[4] A motion for summary judgment, which is not based on the merits of the case, is pending in only one Related Case. Discovery is

---

[4] The Honorable Robert N. Scola certified the proposed class of Florida homeowners in *Williams* and appointed undersigned counsel Class Counsel. *See Williams,* No. 11-cv-21233 (S.D. Fla.) (D.E. 211 at 12). Defendants appealed the order, but the Eleventh Circuit denied the Rule 23(f) petitions. Undersigned counsel also filed *Kunzelmann v. Wells Fargo Bank, N.A.*, in the Southern District of Florida seeking to certify a nationwide class of mortgagors with force-placed coverage issued by Assurant. *See* No. 11-cv-81373 (S.D. Fla.) (D.E. 1). Class certification briefing will be complete on July 19, 2012. *See id.* (D.E. 75).

ongoing in all Related Cases.

In short, while a few cases in the Southern District of Florida are more advanced than the others, most of the thirty-two cases are in the early stages of litigation, and thus would benefit from the centralization of pretrial proceedings.

## II.    ARGUMENT

### A.    TRANSFER IS APPROPRIATE PURSUANT TO 28 U.S.C. § 1407.

Pursuant to 28 U.S.C. § 1407, the Panel may consolidate cases involving one or more common questions of fact and transfer them to a single district when it determines that such a transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." Thus, the Panel must assess whether: (1) the cases involve one or more common questions of fact; (2) centralization will be for the convenience of parties and witnesses; and (3) centralization will promote the just and efficient conduct of the cases. Here, each of these considerations decisively favors MDL consolidation.

### 1.  The Related Cases Involve Common Questions of Fact.

The Related Cases all challenge force-placed insurance programs that were designed by QBE, Balboa, and Assurant, the three major insurers responsible for almost all force-placed coverage issued between 2004 and 2011. Both programs were designed to comply with guidelines set forth by Freddie Mac and Fannie Mae and, consequently, both programs operate in precisely the same manner.[5]  *See id.*  A common factual

---

[5] Fannie Mae announced on March 14, 2012 that it will no longer allow banks to seek reimbursement of lender placed insurance for: (1) any lender-placed insurance commission that is earned by the servicer or any related entity, (2) any costs associated with insurance tracking or administration, or (3) any other costs *beyond the actual cost* of the lender-placed insurance policy premium. *See* Fannie Mae Servicing Guide Announcement,                         March                14,                2012, https://www.efanniemae.com/sf/guides/ssg/annltrs/pdf/2012/svc1204.pdf.).

contention in all thirty-two Related Cases is that, through these virtually identical programs, the banks and insurers charge homeowners force-placed premiums that are not competitive and are significantly higher than those that would be available in the open market. All thirty-two Related Cases also allege that force-placed premiums are inflated to cover "unearned commissions" or kickbacks, and most Related Cases allege that the banks and insurers force place insurance on homeowners in excess of what their mortgage contracts and certain federal regulations require.

### 2. Centralization Will Be More Convenient.

Centralization of these lawsuits will save the plaintiffs and defendants the burden of having to prosecute and defend competing and overlapping class actions in multiple federal districts across the country. In addition, because the Related Cases are premised on the same force-placed scheme and practices and seek legal relief grounded in common legal theories, they will require essentially the same discovery from each defendant regarding: (1) the provisions in homeowners' mortgage contracts that allow the lender or servicer to purchase and force place insurance; (2) the exclusive and uncompetitive arrangements that each defendant bank enters into with its cooperating insurers; (3) the manner in which force-placed premiums are calculated (and ultimately inflated); (4) the uniform manner in which each class member is subject to the banks' force-placed schemes; and (5) the "commissions" or kickbacks that the defendants collect on each force-placed insurance policy. Without consolidation, the plaintiffs would be required to issue, and the defendants would be required to respond to, multiple and duplicative discovery requests seeking the same information, and key witnesses would be required to sit for multiple and duplicative depositions. Finally, in addition to being more convenient for the parties and witnesses, centralization will conserve judicial resources by permitting

one judge to preside over the same claims involving the same parties.

### 3. Centralization Will Promote the Just and Efficient Conduct.

Transfer and consolidation will promote the just and efficient conduct of the Related Cases because it will eliminate the possibility of conflicting pre-trial rulings. Plaintiffs assert many of the same claims—breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment—and inconsistent rulings could result if different courts address these claims. *See In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003) (noting that transfer is favored where there are overlapping legal issues among the various cases). Dispositive motions and motions for class certification will require the resolution of essentially the same issues of fact and law. Indeed, underscoring this point, regardless of which bank or insurer is involved, plaintiffs in Related Cases against Chase and Bank of America have relied upon an order in *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011), denying Wells Fargo's motion to dismiss to oppose motions to dismiss in their own cases. *See, e.g., McNeary-Calloway v. J.P. Morgan Chase Bank, N.A.*, No. 11-cv-03058 (N.D. Cal.) (DE 55 at 17); *Gustafson v. BAC Home Loan Servs. LP*, No. 12-cv-00242 (W.D.N.C.) (DE 61 at 6, 25).

The risk of inconsistent pre-trial rulings is particularly high here due to the presence of so many competing and overlapping putative nationwide classes. *See In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) ("[It] is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest"); *see also In re Imagitas, Inc., Drivers' Privacy Prot. Act Litig.*, 486 F. Supp. 2d 1371, 1372 (J.P.M.L. 2007)

(centralizing actions that contained "competing class allegations"); *In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381, 1381 (J.P.M.L. 2003) (centralizing actions that involved "overlapping putative class actions"). Where multiple class actions have been initiated against different defendants who are engaged in substantially similar conduct, centralization serves the convenience of parties and witnesses and promotes the just and efficient conduct of the litigation. *See, e.g., In re Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335-36 (J.P.M.L. 2009) (industry-wide centralization); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 398 F. Supp. 2d 1356, 1358 (J.P.M.L. 2005) (consolidating proceedings in fourteen actions and twenty-one potential tag-along actions); *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1362 (J.P.M.L. 2004) (consolidating ninety-six cases against six defendants).

Additionally, none of the parties will be unfairly prejudiced by transfer, because all of the Related Cases are in the early stages of litigation, with the exception of *Williams*. Indeed, twenty-one of the thirty-two Related Cases were filed just within the past four months, and none of the remaining cases besides *Williams* has yet proceeded to a ruling on class certification.

We anticipate that some parties may argue in favor of company-specific, as opposed to industry-wide, consolidation. But given the virtually identical nature of the defendants' force-placed insurance practices and the legal questions presented, such separation would eliminate many of the efficiencies to be gained from centralization and increase the potential for inconsistent rulings. Any defendant-specific differences that may exist can readily be managed by the transferee court through separate discovery and/or motion tracks, if advisable. *See, e.g., In re Janus Mut. Fund Inv. Litig.*, 310 F.

Supp. 2d at 1361 (creating multi-defendant MDL).

Still other parties may oppose transfer and consolidation altogether on the grounds that voluntary, informal cooperation among the parties would be adequate and preferable. However, the complexity of this litigation, due in part to the large and ever-growing number of Related Cases, makes voluntary, informal cooperation impractical. Indeed, cases in which the panel has denied centralization in favor of voluntary cooperation have involved only a handful of pending actions. *See, e.g., In re Boehringer Ingelheim Pharm., Inc., Fair Labor Standards Act (FLSA) Litig.*, 763 F. Supp. 2d 1377, 1378–79 (J.P.M.L.2011) (denying centralization of four actions in which plaintiffs in three actions shared counsel and, in all actions, the common defendant was represented by the same law firm, concluding that "alternatives to formal centralization, such as voluntary cooperation among the few involved counsel and courts, appear[ed] viable"). When faced with many cases against multiple defendants, the Panel has chosen centralization over the dim prospects of voluntary cooperation. *See In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1382 (J.P.M.L. 2011) (consolidating seventeen actions against at least twelve defendants in one district); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 626 F. Supp. 2d 1346, 1347 (J.P.M.L. 2009) (consolidating ten actions against numerous defendants in one district); *In re Checking Account Overdraft Litig.*, 626 F. Supp. 2d at 1335-36 (industry-wide centralization); *In re Air Crash Disaster Near Dayton, Ohio on March 9, 1967*, 310 F. Supp. 798, 799 (J.P.M.L. 1970) (centralizing cases despite fact that informal coordination of pretrial proceedings resulted in some settlements because discovery was not complete).

Additionally, as described below, undersigned counsel's experience with one

14

particular attempt at voluntary cooperation demonstrates that the capacity for such cooperation in this case is limited. In *McNeary-Calloway v. J.P. Morgan Chase Bank, N.A.*, No. 11-cv-03058 (N.D. Cal.), the parties filed a stipulation to stay the case pending mediation, which Magistrate Judge Joseph C. Spero granted.[6] Counsel for the *McNeary-Calloway* plaintiffs, together with plaintiffs' counsel in some of the other Related Cases against Chase, then arranged for an informal mediation with Chase. Undersigned counsel learned of this effort and sought to participate. Counsel for the *McNeary-Calloway* plaintiffs, however, demanded that undersigned counsel first withdraw the initial Motion to Transfer filed on June 14, 2012, or agree to an indeterminate extension of time for responses to the Motion to Transfer, as a price for participating in the mediation. When undersigned counsel indicated an unwillingness to abandon the Motion to Transfer, counsel for the *McNeary-Calloway* plaintiffs excluded undersigned counsel from participating in the mediation process with Chase. Voluntary cooperation is unlikely to promote the just and efficient conduct of the Related Cases.

**B.    THE RELATED CASES SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF FLORIDA.**

The Southern District of Florida is a proper choice for the transferee district because (1) it has the strongest nexus to this litigation; (2) more Related Cases are pending in the Southern District of Florida than in any other district, including the most advanced force-placed insurance case in the country; (3) it has adequate resources to handle this docket; and (4) the judges in the Southern District of Florida are exceptionally qualified and experienced with MDL litigation.

---

[6] Plaintiffs' counsel in *McNeary-Calloway* previously informed a federal judge in New York that an MDL

**1. The Southern District of Florida Has the Strongest Nexus to the Litigation.**

The Panel has articulated a concern for "centrality" in selecting a district that best represents the parties involved in the litigation. *See, e.g., In re TJX Cos., Inc.,* 505 F. Supp. 2d 1379, 1380 (J.P.M.L. 2005). In determining centrality, the Panel examines geography and the economic impact of the alleged wrongful conduct. *In re Oil Spill By The Oil Rig "Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010) (centralizing cases in district closest to the "geographic and psychological 'center of gravity' in this docket"); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 269 F. Supp. 2d 1372, 1373 (J.P.M.L. 2003) (noting the proximity of the transferee district to the location of the wrongful conduct). This factor weighs heavily in favor of transferring the case to the Southern District of Florida, because, for the years 2009 through 2011, more force-placed insurance was written in Florida than in any other state, by far. *See* Birnbaum Aff. ¶ 39. Between 2004 and 2011, for example, 27.9% of the total nationwide gross written premiums for residential force-placed insurance were charged to Florida residents—more than in any other state. *See id.* ¶ 39 & Table 1. Florida's share of the nationwide force-placed premium has been even greater in recent years—34.3%, 36.7%, and 35.1% for 2009, 2010, and 2011, respectively. *See id.* Florida's share for these years was three times greater than that held by California, the state with the second-highest concentration of force-placed premiums nationwide. *See id.* Because Florida homeowners are charged more force-placed premiums than others, a verdict in any of the Related Cases will likely have the greatest economic impact in Florida.

---

was necessary and proper for force placed insurance cases.

### 2. More Related Cases Are Pending in the Southern District of Florida Than in Any Other District.

The number of cases pending in a district is a factor the Panel has considered when determining the transferee court. *See, e.g., In re Nat'l Arbitration Forum Antitrust Litig.*, 682 F. Supp. 2d 1343, 1346 (J.P.M.L. 2010) (relying on majority of actions were pending in district as a reason to select district as the transferee court). Here, twice as many Related Cases are pending in the Southern District of Florida than in the districts with the next-highest concentrations of cases. As a result, nine judges in the Southern District of Florida have become familiar with the issues raised in the Related Cases.[7] Moreover, three judges in particular—Judge Cecilia M. Altonaga, Judge Robert N. Scola, and Judge Donald M. Middlebrooks—have gained extensive knowledge of the facts and issues raised by ruling on dispositive motions or motions for class certification.[8]

### 3. Docket Conditions in the Southern District of Florida Are More Favorable Than in Other Districts.

The Southern District of Florida is less burdened and has significantly more favorable docket conditions than the Northern District of California or the Southern District of New York, the two jurisdictions with the next-highest concentrations of cases. This factor is typically considered in choosing the transferee court. *See In re Teflon Prods. Liab. Litig.*, 416 F. Supp. 2d 1364, 1365 (J.P.M.L. 2006).

---

[7] *See Barreto v. Chase Home Fin., LLC*, No. 12-cv-22053 (S.D. Fla.) (Moore); *Yogev v. JP Morgan Chase Bank, N.A.*, No. 12-cv-21988 (S.D. Fla.) (Cooke); *Pulley v. JPMorgan Chase Bank, N.A.*, No. 12-cv-60936 (S.D. Fla.) (Cohn); *Herrick v. JPMorgan Chase Bank, N.A.*, 12-cv-22256 (S.D. Fla.) (Martinez); *Gallagher v. Bank of America, N.A.*, No. 12-cv-80681 (S.D. Fla.) (Ryskamp); *Kunzelmann*, No. 11-cv-81373 (S.D. Fla.) (Middlebrooks); *Williams*, No. 11-cv-21233 (S.D. Fla.) (Altonaga, Scola); *Ulbrich v. GMAC Mortgage, LLC*, No. 11-cv-62424 (S.D. Fla.) (Scola); *Martorella v Deutsche Bank Nat'l Trust Co.*, No. 12-cv-20372 (S.D. Fla.) (Marra).

[8] *See Williams,* No. 11-cv-21233 (S.D. Fla.) (DE 76, 93, 103, 211); *Kunzelmann*, No. 11-cv-81373 (S.D. Fla.) (D.E. 64).

The Southern District of Florida has only 5,744 cases pending. (*Federal Court Management Statistics, 2011- Judicial Caseload Profile*.)[9]  That is 14% less than the 6,645 cases pending in the Northern District of California and approximately one-third of the 17,822 cases pending in the Southern District of New York.  *Id.*  Each federal judge in the Southern District of Florida has, on average, only 319 open cases on his or her docket, compared to 475 cases per judge in the Northern District of California, and 637 per judge in the Southern District of New York.  *Id.*

Another relevant statistic is "[t]he percentage of cases over three years old" on a district's docket.  D. Herr, *Multidistrict Litigation Manual*: *Practice Before the Judicial Panel on Multidistrict Litigation*, § 6:17 at 210-11 (2009).  Here again, the Southern District of Florida is by far the more efficient district with only 1.8% of its cases pending for three years or more.  (*Annual Report* at Table C-6.)[10]  This is particularly impressive when measured against the Northern District of California, where four times as many cases (8.8%) have been pending three years or more, and the Southern District of New York, where 26.7% of the total cases have been pending for three years or more.  *Id.*

Another indication of the Southern District of Florida's efficiency is that its average median time for disposition of a case is significantly shorter than in the other districts. (*Annual Report*, at Table C-5.)[11]  The Panel has recognized that a short median time for disposition of a case is a significant factor in selecting the proper transferee

---

[9]http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/DistrictCourtsSep2011.aspx    (last visited June 8, 2012); *see also* http://www.uscourts.gov/Statistics/JudicialBusiness.aspx (last visited June 8, 2012).

[10] http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011/appendices/C06Sep11.pdf (last visited 6/08/12.)

[11] http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011/appendices/C05Sep11.pdf (last visited 6/08/12.)

court.  *See In re Nat'l Student Mktg. Litig.*, 368 F. Supp. 1311, 1318 (J.P.M.L. 1972) (noting the importance of median time to disposition when comparing districts).  The Southern District of Florida's median time for disposition of a civil case is less than five months, which is almost twice as fast as the Northern District of California, where the median time is eight months, and more than seven times faster than the Southern District of New York, where the median is 38.5 months. (*Annual Report*, at Table C-5.)  The need for judicial efficiency is particularly critical here because the housing market in Florida is one of the worst in the nation, Florida has more force-placed gross written premiums than any other state, and many thousands of Florida residents, face losses similar to Plaintiffs'.

### 4. Judges in the Southern District of Florida Are Qualified and Experienced in MDL Litigation.

As evidenced by the Panel's selection of the Southern District of Florida as the transferee court in numerous MDL actions, the judges in the Southern District of Florida are exceptionally qualified and experienced with MDL litigation.  The Panel has consistently acknowledged that MDL experience is an important factor in deciding upon a transferee court. *See In re Trasylol Prods. Liab. Litig.*, 545 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (assigning case to the Southern District of Florida and stating, "by centralizing this litigation before Judge Donald M. Middlebrooks, we are assigning this litigation to a jurist who has the experience to steer this litigation on a prudent course."); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 626 F. Supp. 2d 1346, 1347 (J.P.M.L. 2009) (finding that centralization in the chosen district permits the Panel to "effect the section 1407 assignment to a judge who has extensive experience in multidistrict litigation as well as the ability and temperament to steer this complex litigation on a steady and expeditious course").  The Southern District of Florida

currently has nine MDL cases pending before seven separate judges. *MDL Statistics Report - Distribution of Pending MDL Dockets as of May 14th, 2012*.

In addition, Chief Judge Moreno has significant experience with MDL litigation involving the insurance industry, having presided over the almost completed *In re Managed Care Litigation* (MDL No. 1334), since April 2000. And Senior District Court Judge King has, since June 2009, presided over *In re Checking Account Overdraft Litigation* (MDL No. 2036), a consumer class action against more than forty national banks challenging the common industry practice by which the banks charge overdraft fees to their customers. Chief Judge Moreno has indicated that he would welcome a force-placed insurance MDL in the Southern District of Florida, to be handled by himself or another district judge.

## III.     CONCLUSION

There are currently at least thirty-two force-placed insurance putative class action complaints pending against twelve different defendants and their affiliated entities. All of the Related Cases share factual and legal questions relating to the defendants' force-placed insurance practices, and more cases will likely be filed. Plaintiffs respectfully request that the Panel consolidate all of the Related Cases for discovery and pre-trial purposes under 28 U.S.C. § 1407 and transfer them to the Southern District of Florida.

Dated this 12th day of July 2012.

Lance A. Harke, Esq.
lharke@harkeclasby.com
Sarah Engel, Esq.
sengel@harkeclasby.com
Howard M. Bushman, Esq.
hbushman@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone: 305-536-8220
Facsimile: 305-536-8229
*Counsel for Plaintiffs*

/s/ Adam M. Moskowitz__
Adam M. Moskowitz, Esq.

hst@kttlaw.com
Harley S. Tropin, Esq.
amm@kttlaw.com
Thomas A. Tucker Ronzetti, Esq.
tr@kttlaw.com
Rachel Sullivan, Esq.
rs@kttlaw.com
Robert J. Neary, Esq.
rn@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON, P.A.**
2525 Ponce De Leon Blvd., 9th Floor
Miami, Florida 33134
Telephone: 305-372-1800
Facsimile: 305-372-3508

*Counsel for Plaintiffs*

Chip Merlin, Esq.
cmerlin@merlinlawgroup.com
Mary E. Fortson, Esq.
mfortson@merlinlawgroup.com
Sean M. Shaw, Esq.
sshaw@merlinlawgroup.com
**MERLIN LAW GROUP, P.A.**
777 S. Harbour Island Blvd., Suite 950
Tampa, FL 33602
Telephone: 813-229-1000
Facsimile: 813-229-3692
*Counsel for Plaintiffs*

Roy E. Barnes, Esq.
John R. Bevis, Esq.
bevis@barneslawgroup.com
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
Telephone: 770-227-6375
Facsimile: 770-227-6373

*Counsel for Plaintiffs*

Aaron S. Podhurst, Esq.
apodhurst@podhurst.com
Peter Prieto, Esq.
pprieto@podhurst.com
Stephen F. Rosenthal, Esq.
srosenthal@podhurst.com
John Gravante, Esq.
jgravante@podhurst.com
Matthew Weinshall, Esq.
mweinshall@podhurst.com
**PODHURST ORSECK, P.A.**
City National Bank Building
25 West Flagler Street, Suite 800
Miami, Florida 33130
Telephone: 305-358-2800
Facsimile: 305-358-2382
*Counsel for Plaintiffs*

Jeffrey N. Golant, Esq.
jgolant@jeffreygolantlaw.com
**LAW OFFICES OF JEFFREY N. GOLANT**
1000 W. McNab Road, Suite 150
Pompano Beach, FL 33069
Telephone: 954-942-5270
Facsimile: 954-942-5272

*Counsel for Plaintiffs*